## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EAST PENN MANUFACTURING CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil No. <u>5:24-cv-03077</u> |
| | ) |
| JULIE SU, ACTING SECRETARY OF | ) |
| LABOR, U.S. DEPARTMENT OF LABOR | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff East Penn Manufacturing Co. ("Plaintiff" or "East Penn") brings this independent action to set aside a judgment entered in this Court on May 31, 2023, in the case captioned *Julie Su, Acting Secretary of Labor v. East Penn Mfg. Co.*, Civil Action No. 5:18-cv-1194-GEKP, pursuant to newly discovered evidence of fraud and other misconduct by Defendant, the United States Secretary of Labor, acting through her counsel in that prior action.

## JURISDICTION

1.      Jurisdiction of this action is conferred upon the Court because it is the same Court in which the United States Secretary of Labor brought the original lawsuit and the Court therefore has inherent power and continuing jurisdiction from the prior action, Civ. No. 5:18-cv-1194-GEKP. *See* Fed. R. Civ. P. 60(d)(1) and (3); *see also, e.g., Weldon v. United States*, 70 F.3d 1, 3-4 (2d Cir. 1995)  No other independent basis for jurisdiction is required. *See United States v. Beggerly*, 528 U.S. 34, 45 (1998) (quoting Advisory Committee Note to Federal Rule of Civil Procedure 60(b) (indicating that "[i]f the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an

1

action.")); *see also Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008) ("The power of a court to invoke Rule 60(b) to vacate its own earlier judgment is unquestioned.").  However, to the extent that a statutory source of jurisdiction is required, it is found in the Federal Tort Claims Act, 28 U.S.C. § 1346(b).  *See, e.g., Weldon*, *supra*.

## PARTIES

2.      Plaintiff[1] East Penn Manufacturing Co. is a corporation duly organized under the laws of the Commonwealth of Pennsylvania, with a registered office at Deka Road, Lyon Station, Pennsylvania 19536. Plaintiff is engaged in manufacturing activities within the jurisdiction of this Court. East Penn was the defendant in the prior action in Civil No. 5:18-cv-1194-GEKP.

3.      Defendant Julie Su, the United States Acting Secretary of Labor, is the successor-in-name to the original Plaintiff, R. Alexander Acosta, Secretary of Labor, who commenced the prior action in Civil No. 5:18-cv-1194-GEKP, and Julie Su was the most-recent named plaintiff in that action when judgment was entered.

## NATURE OF THIS ACTION

4.      On March 20, 2018, the Secretary of Labor brought an action against East Penn for failure to pay overtime wages allegedly owed pursuant to the Fair Labor Standards Act. *See* dkt. 1 in *Acosta v. East Penn Mfg. Co.*, Civ. No. 5:18-cv-1194-GEKP (E.D. Pa.).[2] The case proceeded through discovery and motions practice, including a summary judgment ruling adverse to East Penn in some parts, and the remaining claims in the case went to trial and resulted in a jury verdict. On May 9, 2023, the jury returned a verdict in favor of the Secretary in the amount of

---

[1] Because the roles of the parties are reversed in this independent action compared to the prior action, this Complaint avoids confusion by generally referring to the current Plaintiff (the former defendant) as "East Penn," and the current Defendant (the former plaintiff) as the "Secretary of Labor" or "the Secretary."

[2] Unless otherwise specified, docket references herein are to Civ. No. 5:18-cv-1194-GEKP.

$22,253,087.56. *See* dkt. 589. On May 31, 2023, judgment was entered in favor of the Secretary. *See* dkt. 591.

5.      East Penn recently became aware of facts that give rise to a reasonable concern that the judgment in Civil No. 5:18-cv-1194 was procured by fraud or misconduct that warrants setting aside the judgment.

6.      The Regional Solicitor of Labor who was the lead counsel for the Secretary throughout the case and at trial, Oscar Hampton, was removed from his role as Regional Solicitor months before the trial in the prior action (even though he falsely represented to the Court and the jury that he was still the Regional Solicitor).

7.      In addition, three weeks after judgment was entered Mr. Hampton was removed from the prior action altogether (even though the Secretary repeatedly and falsely represented to the Court and East Penn on post-trial filings that he was still the Regional Solicitor and was still counsel in the matter). And he was later terminated from the Department of Labor.

8.      After the Court entered its last ruling in the prior action—indeed, on the same day— Mr. Hampton brought suit against the Department of Labor over his termination, resulting in findings of the Chief Administrative Appeals Judge of the Administrative Review Board in a document titled "Final Agency Decision." *See* attached Ex. B. The Final Agency Decision makes clear that Mr. Hampton was fired for a variety of misconduct, including a conclusion that Mr. Hampton bullied attorneys working for him to endure his ethical violations in litigation, as documented by numerous members of his staff.  These internal complaints about Mr. Hampton appear to relate to his work on Civil No. 5:18-cv-1194-GEKP; indeed, the only litigation mentioned in the 48-page Final Agency Decision is that case.  This raises serious questions about whether the Secretary's counsel in the prior action properly responded to interrogatories, document

3

requests, and requests for admission; whether the declarations they filed were truthful and voluntarily given; and whether their interactions with witnesses were ethical.

9.      The proper relief for such misconduct is to set aside the judgment in the prior action.

## FACTS

10.     Throughout the life of the prior action, the lead counsel for the Secretary was Oscar Hampton, at one point the Regional Solicitor of Region III of the United States Department of Labor. *See* docket sheet in Civil No. 5:18-cv-1194-GEKP. Mr. Hampton held himself out to the Court as having that title in every filing before trial that contained a signature block of counsel. This included numerous filings during the pretrial phase and during the trial itself. *See, e.g.,* dkt. nos. 521 (filed Mar. 6, 2023); 533 (filed Mar. 24, 2023); 555 (filed Apr. 11, 2023); 580 (filed May 3, 2023); 633 (filed June 7, 2023); 636 (filed June 23, 2023); 643 (dated July 21, 2023); 646 (dated Aug. 11, 2023); and 656 (dated Aug. 30, 2023).

11.     In addition, Mr. Hampton repeatedly told the jury that he was the Regional Solicitor. *See* March 10, 2023 Trial Transcript (dkt. 594) at 21:1-4 ("My name is Oscar Hampton. I am the legal [sic: Regional] Solicitor for the U.S. Department of Labor. Secretaries come and go but I'm always here and have been the entire time on this case."); *id.* at 23:22-23:25 ("I am the lead counsel in this case. I'm also the Regional Solicitor for the Secretary of Labor."); Apr. 10, 2023 Trial Tr. (dkt. 611) at 152:9-15 ("I am the Regional Solicitor for the U.S. Department of Labor.").

12.     Moreover, Mr. Hampton repeatedly disparaged defense counsel as being "Washington attorneys," which, upon information and belief, was intended to imply that East Penn's counsel were carpetbaggers who should not be believed. *See* Mar. 20, 2023 Trial Tr. at 49:19-50:9 ("I [Mr. Hampton] have been working with Mr. Mueller and the lawyers from

Washington, DC, Your Honor."); May 3, 2023 Trial Tr. at 87:24-88:8 ("And they [East Penn]
came up with this explanation only after hiring their Washington lawyers."); *id.* at 98:11-98:17
("East Penn's Washington lawyers …."); *id.* at 108:20-23 ("The grace period was, again, a
concoction made out of whole cloth from the Washington lawyers."); *id.* at 110:25-111:8 ("As
you've seen East Penn's Washington lawyers parse their words carefully – it's a talent I wish I
had."); *id.* at 118:20-119:4 ("Again, a concoction of the Washington lawyers."); *id.* at 135:12-15
(calling the Secretary's Trial Exhibit 2, a collection of employee declarations, "documents that
were generated – drafted and generated by East Penn's lawyers, the ones from Washington ….");
*id.* at 253:8-13 ("East Penn has better resources [than the U.S. government], that they can pay for
the best Washington lawyers …."). These statements were not only misleading because, as
explained below, Mr. Hampton was also by that point assigned to a desk job in Washington, DC,
but they were also false in that East Penn's counsel also hailed from Philadelphia and Reading,
Pennsylvania.

13. On November 7, 2023, Judge Pratter issued her opinion denying East Penn's
motion for judgment notwithstanding the verdict or alternatively for a new trial. *See* dkt. 669-70.
That was the final ruling in the District Court.

14. Only after the final post-trial ruling was issued—indeed on the very same day—
Mr. Hampton sued the Department of Labor. *See* attached Exhibit A (Complaint in *Hampton v.
Julie Su, Acting Secretary of Labor,* Civ. No. 23-3338 (DLF) (D.D.C. Nov. 7, 2023)). In his
Complaint, Mr. Hampton revealed for the first time that the Secretary had removed him from the
position of Regional Solicitor on November 10, 2022, which was four months before the trial in
the East Penn case commenced on March 10, 2023. *See* Ex. A at ¶ 14. In addition, he revealed that,
commencing November 10, 2022, "Mr. Hampton's work station for Defendant [the Acting

Secretary of Labor] was at DOL's Front Office in Washington, D.C." *Id.*; *see also id.* at ¶ 91 (noting that Mr. Hampton, on November 10, 2022, was "publicly remov[ed] [] from his position as Regional Solicitor for Region III, and assign[ed] [] to an unspecified position in DOL headquarters in Washington, DC."). Thus, he held the same position of a "Washington attorney" that he routinely used during the trial of the prior action to sully East Penn's counsel. Mr. Hampton also revealed in his Complaint that he was terminated altogether on September 12, 2023. *See id.* at ¶ 104.[3] That termination was precisely one week after the September 5, 2023, oral arguments before Judge Pratter on the post-trial motions.

15.    On June 10, 2024, the Secretary finally responded to Mr. Hampton's lawsuit by filing a motion to dismiss. *See* dkt. 13 at Civ. No. 23-3338 (DLF). Through three extensions of time over seven months, *see* dkt. nos. 8, 10 and 12 in Civ. No. 23-3338 (DLF), the Secretary's response to Mr. Hampton's Complaint ended up being 10 days outside of the one-year period in Federal Rule of Civil Procedure 60(b)(3) to set aside the judgment in Civil No. 5:18-cv-1194-GEKP. This had the practical effect of ensuring that anything said by the Secretary in her filing could only be used by East Penn in an independent action to set aside the judgment.

16.    In the Secretary's motion to dismiss Mr. Hampton's lawsuit, she described Mr. Hampton as "a former employee of the Department of Labor (the 'Department'), who claims that he was terminated following the Department's investigation into his own misconduct …." *See id.* at p.1 (ECF p.5). The Secretary also noted that "Plaintiff's departure from the Department followed

---

[3] On September 29, 2023, the Secretary filed a motion for leave to withdraw Mr. Hampton's appearance, stating only that "Mr. Hampton is no longer employed with the United States Department of Labor." *See* dkt. 665. The reason for Mr. Hampton's withdrawal was not provided to East Penn's counsel, and East Penn, as is customary professional courtesy, did not oppose the motion to withdraw. The filing did not disclose that Mr. Hampton had been terminated or the reasons for that termination. Judge Pratter granted the withdrawal on October 2, 2023. *See* dkt. 666.

the Department's extensive investigation into complaints lodged against [Mr. Hampton] for misconduct against his fellow employees and 'other alleged misconduct.'" *Id.* For purposes of her motion to dismiss, the Secretary "assumes the truth of Plaintiff's allegations" and "reserves the right to test the cause and terms of Plaintiff's departure from the Department in discovery." *Id.* at p.2 n.1 (ECF p.6). However, the Secretary attached to her motion a 48-page Exhibit A, which is an October 25, 2023, Final Agency Decision signed by the Chief Administrative Appeals Judge of the Administrative Review Board.[4] *See* attached Exhibit B. This document existed before Judge Pratter issued her final ruling in the prior action on November 7, 2023, but East Penn was unaware of its existence or its contents until it was lodged in federal court in the District of Columbia on June 10, 2024.

17.    The Final Agency Decision is a remarkable document. Not only does it discuss Mr. Hampton's misconduct throughout its 48 pages, but it reveals that the Department also has in its files (not yet publicly disclosed) a Report of Investigation ("ROI") that is at least 1,102 pages long. *See* attached Ex. B at ECF pp.16-17 nn.115-18. Various facts recited in the Final Agency Decision are pertinent to the instant Complaint.

18.    The lawsuit that the Secretary, through Mr. Hampton, filed against East Penn on March 20, 2018 is the ***only*** lawsuit mentioned in the Secretary's Final Agency Decision. *See* attached Ex. B at ECF pp. 14-15. This is not surprising, in that the East Penn case was, on information and belief, the largest case in the Regional Solicitor's office in terms of manpower and budget, which Mr. Hampton complained about to Judge Pratter in several hearings. The

---

[4] Mr. Hampton's opposition to the Secretary's motion to dismiss was filed on June 24, 2024. *See* dkt. 14 in Civ. No. 23-3338 (DLF). Mr. Hampton does not dispute the veracity of the Final Agency Determination, and, indeed, admits that it "states the [Secretary's] internal conclusions on" Mr. Hampton's allegations. *See id.* at p.8 n.2 (ECF p.8). Recognizing the damning nature of the document, Mr. Hampton asked that the Final Agency Action be "stricken from the record." *Id.*

Decision notes that, "On November 14, 2022 [about four months before the East Penn trial], S1 [the Deputy Solicitor for Regional Enforcement] and S2 [the Solicitor of Labor] travelled to Philadelphia to inform staff and managers that [Mr. Hampton] had been detailed to the FO [Field Office in Washington, DC]. They prepared talking points that focused on [Mr. Hampton's] work on the *East Penn* litigation …." *Id.* at ECF p.14.

19.     Then, "[o]n June 21, 2023 [after the East Penn trial] … the terms of the DNCO[5] were updated to remove [Mr. Hampton] from the *East Penn* litigation …." *Id.* at ECF p.15 & n.109.

20.     Despite having removed Mr. Hampton from the prior action on June 21, 2023, the Secretary continued to file post-trial pleadings falsely listing Mr. Hampton as counsel on the case and falsely representing that he still held the title of "Regional Solicitor." *See* East Penn dkt. 636 (filed June 23, 2023); dkt. 643 (filed July 21, 2023); dkt. 644 (filed August 10, 2023); dkt. 646 (filed August 11, 2023); dkt. 648 (filed August 16, 2023); dkt. 654 (filed August 25, 2023); dkt. 656 (filed August 30, 2023).

21.     Similarly, when Judge Pratter told the Secretary's counsel at the September 5, 2023 hearing on the post-trial motions that he "should tell Mr. Hampton" something, the Secretary's counsel responded, "Certainly, Your Honor," without mentioning the DNCO which prohibited the Secretary's counsel from even talking to Mr. Hampton and that he no longer had any role in the litigation. *See* East Penn dkt. 659, Tr. at 6:11-14. Upon information and belief, this concealment was so that neither East Penn nor Judge Pratter would know that fact at the time of the hearing.

---

[5] The DNCO is the "Notice of Detail and No Contact Order" to Mr. Hampton that reassigned him to Washington, DC on November 10, 2022, and prohibited him from contacting other employees in the Department." *See* Ex. B at ECF p.14 & n.99.

22.     The Final Agency Decision also disclosed the internal concerns of many employees under Mr. Hampton's supervision about ethical violations. On October 1, 2021 [during East Penn pretrial proceedings], an attorney in Mr. Hampton's office emailed the Deputy Solicitor for Regional Enforcement, telling him about how he "and some other long-time RSOL attorneys would be happy to speak with him" about the "disconcerting" results of a Federal Employee Viewpoint Survey ("FEVS") that he believed should "prompt some inquiry" into Mr. Hampton's conduct. *See* Ex. B at ECF p.6 & nn.24-25 and 33-34. They then had a telephone call, during which the Deputy Solicitor for Regional Enforcement took notes, which he memorialized in an email to himself. *Id.* at 6 n.35. The attorney complained that Mr. Hampton "can be ***unethical*** and pressure attorneys, which results in either their **giving into the pressure** or risk getting removed from a case." *Id.* at 6-7 & nn.36-37 (emphases added). The attorney "detailed the departure of several attorneys from Region III [the office that prosecuted the East Penn case], all of which he blamed" on Mr. Hampton. *Id.* at 7 n.38.[6]

23.     On October 29, 2021, the Solicitor of Labor received an anonymous letter from another employee in the Solicitor's Office, who "decline[d] to give [his/her] name out of fear of retribution." *Id.* at 7 & n.43. The letter further stated, "[Mr. Hampton's] appointment as the Regional Solicitor of the Philadelphia region has been a catastrophe for the attorneys, and often the administrative staff, that have reported to him … He interprets any disagreement with him as

---

[6] Consistent with report of that attorney, five attorneys who worked on the East Penn case separated from the Department and withdrew their appearances in the case. *See* East Penn dkt. 49 (withdrawal of Jordana Greenwald on March 1, 2019); dkt. 149 (withdrawal of Christopher Rider on January 15, 2020); dkt. 299 (withdrawal of Patrick Dalin on January 12, 2022); dkt. 336 (withdrawal of Bertha Astorga on June 23, 2022); dkt. 340 (withdrawal of Ethan Dennis on June 28, 2022).

insubordination, and any unwillingness to **approach litigation with as an aggressive approach as his** as weakness." *Id.* at 8 & n.44 (emphasis added).

24.     On February 4, 2022, another attorney who had been in the office emailed the Deputy Solicitor for Regional Enforcement, and on February 14, 2022, they spoke by telephone. *Id.* at 9 nn. 50-54. The attorney stated that Mr. Hampton "wants to discipline people for disagreeing with him." *Id.* at 9 n.53. The attorney had transferred out of Mr. Hampton's region because of Mr. Hampton, and "believed that another attorney in Philadelphia would retire soon because of Mr. Hampton's behavior."[7] *Id.* at 9 & nn.53-54.

25.     On or before May 26, 2022, there was an "internal survey" of employees under Mr. Hampton's supervision. *Id.* at 11 & n.71. "The results indicated that approximately 12 employees provided an identical statement in response to the survey." *Id.* at 11. In pertinent part, the identical statement from these 12 employees stated:

> We are summarizing our concerns about the office in this manner because we want to ensure that we remain anonymous. This response is directed toward SOL Region III's "senior management," in particular the Regional Solicitor [Mr. Hampton] and Associate Regional Solicitor. The results of the FEVS are accurate and representative not only of those who responded, but of the majority of non-management attorneys in the office, including us. … Staff attorneys are committed to the mission, but senior management has unfairly accused us of disloyalty when we have engaged in the following activities: … **Expressed honest and valid ethical concerns; Expressed honest and valid concerns about legal and factual weaknesses of cases**. … There has been a tragic amount of turnover over the past few years. More than 15 excellent, hardworking, ethical, and committed attorneys have left the office because of the above problems and because they eventually become too beaten down and unhappy to stay."

---

[7] Based on the timing, East Penn believes that the complaining attorney was Patrick Dalin, who as noted above withdrew from the East Penn case a few weeks earlier. Upon information and belief, East Penn believes that the other attorney who was going to quit was either Bertha Astorga or Ethan Dennis, who withdrew their appearances back-to-back about four months later.

*Id.* at 11 & n. 72 (emphasis added).

26.     On August 29, 2022, the Deputy Solicitor for Regional Enforcement, the Solicitor of Labor, and another Deputy Solicitor received an anonymous letter dated August 9, 2022, from a Philadelphia staff attorney "alleging 'wasteful, ***unethical***, abusive and retaliatory conduct.'" *Id.* at 13 & nn. 83-84 (emphasis added).

27.     At some unspecified point, an "HR representative [of the Secretary of Labor] traveled to [Mr. Hampton's] region to speak with the staff. That meeting so alarmed the HR representative that he requested to immediately speak with [the Deputy Solicitor for Regional Enforcement and the Solicitor of Labor], and told them he had never experienced such a culture of fear in his career." *Id.* at 40 & n.299.

28.     Because of the failure of the Secretary to attach the exhibits to the Final Agency Decision to her filing in the District of the District of Columbia, East Penn does not know the details of the ethical concerns expressed by so many attorneys who worked under Mr. Hampton. However, based on the unusually large amount of time that Mr. Hampton spent on the East Penn matter and the unusually large number of Region III attorneys who worked on the East Penn matter, East Penn has serious and reasonable concerns that those accusations of ethical lapses by Mr. Hampton may have involved the withholding of documents; inaccurate responses to document requests, interrogatories, or requests for admission; inaccurate or involuntary declarations gathered by the Secretary's attorneys; or improper coaching or other influence on witnesses in the East Penn case.

## COUNT I: FRAUD ON THE COURT AND JURY

29.     Plaintiff incorporates all of the preceding paragraphs by reference herein as if fully repeated in this Count.

30.     The conduct alleged herein gives strong reason to believe that, in Civil No. 5:18-cv-1198-GEKP, there was (1) an intentional fraud upon the Court and the jury; (2) by an officer of the Court; (3) directed at the Court and the jury; and (4) that in fact deceived the Court and the jury. The conduct by Mr. Hampton, which he also forced on his subordinate attorneys, was a scheme to interfere with the Court's judicial machinery performing the task of impartial adjudication, and insofar as it involved unethical discovery abuses and misrepresentations to the Court and jury of Mr. Hampton's title and place of work, prevented East Penn from fairly presenting its defense. The conduct was egregious enough to set aside the judgment in the prior action.

31.     East Penn did not have an opportunity to have the grounds now relied upon to set aside the prior judgment fully litigated in the prior action. This independent action to set aside the judgment in Civil No. 5:18-cv-1198-GEKP is being filed within a reasonable time after discovering the above-described facts.

**COUNT II: COMMON LAW FRAUD ON EAST PENN**

32.     Plaintiff incorporates all of the preceding paragraphs by reference herein as if fully repeated in this Count.

33.     The conduct described above constituted fraud on East Penn. The conduct involved misrepresentations or concealments, which were material to the litigation in Civil No. 5:18-cv-1198-GEKP, made with knowledge by the Secretary and her agents of their falsity or recklessness as to whether they were true or false, calculated to deceive, with the intent of misleading East Penn into relying on them or not challenging them, with East Penn's justifiable reliance on the misrepresentations or concealments, and resulting in injury to East Penn proximately caused by such reliance. Had the Secretary of Labor, through her attorneys such as Mr. Hampton, been

12

truthful and forthcoming in discovery and in their statements to the Court and the jury, East Penn could have pursued other discovery, could have sought relief from the Court during discovery or during trial, and could have pointed out to the jury that Mr. Hampton was not the Regional Solicitor and was, just like East Penn's counsel, a "Washington attorney."

WHEREFORE, cause having been shown, Plaintiff East Penn prays for relief against Defendant Julie Su, United States Acting Secretary of Labor, as follows:

(1)     Affording East Penn discovery from the Secretary as may be needed to ascertain the facts still being withheld by the Secretary in support of the Final Agency Decision;

(2)     Affording East Penn discovery from the former attorneys of Region III who worked on the prior action and who have knowledge of the ethical misconduct that was alleged by numerous attorneys against Mr. Hampton; and

(3)     For judgment setting aside the judgment in the prior action as having been procured by the Secretary by fraud on the Court, fraud on East Penn, or other misconduct.

FURTHER, Plaintiff East Penn prays that this Honorable Court award costs in East Penn's favor in prosecuting this action, and its costs and attorneys' fees in having had to defend the prior action, and an order granting such other and further relief as may be necessary and appropriate.


Dated: July 16, 2024                    Respectfully submitted,


                                        s/ *Daniel B. Huyett*
                                        Daniel B. Huyett
                                        Pa. Attorney I.D. No. 21385
                                        STEVENS & LEE, P.C.
                                        111 North Sixth Street, P.O. Box 679
                                        Reading, PA 19603–0679
                                        Telephone: (610) 478–2219
                                        Facsimile: (202) 988–0801
                                        daniel.huyett@stevenslee.com

Thomas I. Vanaskie
Pa. Attorney I.D. No. 29063
Kenneth D. Kleinman
Pa. Attorney I.D. No. 31770
STEVENS & LEE, P.C.
1500 Market Street, East Tower
18th Floor
Philadelphia, PA 19102
Telephone: (215) 751-1946
Facsimile: (610) 371-7975
thomas.vanaskie@stevenslee.com
kenneth.kleinman@stevenslee.com

Michael J. Mueller *pro hac vice pending*
Tonya Gray *pro hac vice pending*
Evangeline C. Paschal *pro hac vice pending*
Perie Reiko Koyama *pro hac vice pending*
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 955–1500
Facsimile: (202) 778–2201
mmueller@huntonak.com
tonyagray@huntonak.com
epaschal@huntonak.com
pkoyama@huntonak.com

*Counsel for Plaintiff, East Penn Manufacturing Co.*