IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EAST PENN MANUFACTURING : 
CO., :
    Plaintiff, :          CIVIL ACTION
 :
        v. :
 :          No. 24-cv-3077
 :
LORI CHAVEZ-DEREMER, :
*SECRETARY OF LABOR, U.S.* :
*DEP'T OF LABOR*, :
    Defendant. :

**REPORT AND RECOMMENDATION**

**CRAIG M. STRAW**                          **March 25, 2026**
**UNITED STATES MAGISTRATE JUDGE**

Before this Court is a discovery dispute regarding East Penn Manufacturing Company's ("East Penn") action requesting to set aside a court judgment based on fraud.[1] East Penn moved to compel production of redacted portions of an internal investigation into the ethical misconduct of one of the Department of Labor's (DOL) attorneys, Attorney Oscar L. Hampton, III. Doc. 71. The DOL opposes the motion, asserting several privileges. Doc. 76. After completing an <u>in camera</u> review of the documents at issue, this Court recommends that East Penn's motion be **GRANTED, in part, and DENIED, in part,** for the reasons set forth below.

## I.  <u>BACKGROUND FACTS</u>

East Penn makes and recycles lead-acid batteries. <u>E. Penn Mfg. Co. v. Chavez-Deremer</u>, No. 5:24-cv-03077, 2025 WL 2803829 at *1 (E.D. Pa. Oct. 1, 2025). Because this work is dangerous, East Penn requires its employees to wear protective gear before clocking in and to shower after clocking out. <u>Id.</u> The Secretary of Labor deemed East Penn's failure to compensate

---

[1] The Honorable Jeffery L. Schmehl referred this limited issue to me for a Report and Recommendation. Doc. 73.

its employees for the actual time it takes to perform these practices a violation of the Fair Labor Standards Act of 1938[2] (FLSA).  As a result, the DOL brought an enforcement action against East Penn.  Id. (citation omitted).  On May 31, 2023, after extensive litigation, a jury found in favor of the DOL in that action and awarded over twenty-two million dollars in back pay.  Id. Attorney Oscar L. Hampton, III, represented the DOL as lead trial counsel in the East Penn enforcement action.  Doc. 48, at 2.  He was the Regional Solicitor of Labor for Region III.[3]  Id. Shortly after the jury trial against East Penn concluded, the DOL offered Hampton retirement "in lieu of termination" for, among other things, retaliatory behavior in the workplace and sexual harassment.  See Doc. 1-4, at 4-16; Doc. 82, at 2.

After learning about Hampton's termination from the DOL, East Penn began this collateral civil action to set aside the judgment against it based on fraud pursuant to Federal Rules of Civil Procedure 60(b).  Doc. 1, at 1-2; Doc. 64-1, at 7.  East Penn believes that, as lead trial counsel in the East Penn enforcement action, Hampton litigated the case "unethically."  E. Penn Mfg. Co., 2025 WL 2803829 at *1.  It presently asks the DOL to turn over documentation detailing the DOL's internal investigation into Hampton's termination.  Id.

The events relevant to the DOL's investigation into Hampton begin on August 23, 2021, when the DOL released the employee feedback survey results for Region III.  Id. at 6.  In that survey, employees from Region III listed problems with senior leadership and a "fear of reprisal" from upper management as their main concern.[4]  Id.  On October 1, 2021, Stanley Keen, the

---

[2] 29 U.S.C.A. § 201, et seq.

[3] Region III of the Solicitor of Labor's Office includes Pennsylvania, Delaware, Maryland, Virginia, West Virginia, and Washington D.C.  See The Philadelphia Regional Solicitor's Office, DEP'T LAB. https://www.dol.gov/agencies/sol/about/regions/philadelphia (last visited Mar. 3, 2026).

[4] Employees were asked whether they could "disclose a suspected violation of any law, rule or regulation without fear of reprisal."  Doc. 1-4, at 8.  Most employees answered "no."  Id.

Deputy Solicitor for Regional Enforcement, received an email from an attorney ("A1") in Region III asking to discuss Hampton's management in light of the survey results.  See id. at 6-7.  In a subsequent meeting, A1 told Keen that under Hampton's management, Region III was a "toxic and dysfunctional workplace," and that Hampton was a "classic workplace narcissist boss."  Id. at 7.  A1 also stated that Hampton could be unethical and pressured other attorneys to follow his orders.  See id.  Additionally, A1 described Hampton as "sexist" because he repeatedly referred to female coworkers in the workplace as "hot."  Id.  Keen and A1 spoke several more times in October 2021 to discuss problems Hampton's staff had expressed.  Id.  Keen memorialized these conversations in emails to himself.  Id.

On October 29, 2021, Seema Nanda, the then-acting Solicitor of Labor, received an anonymous letter from another attorney in Region III.  Id.  In the letter, the anonymous attorney stated that "Hampton's appointment to be Regional Solicitor of [Region III had] been a catastrophe for the attorneys, and often the administrative staff, that . . . reported to him."  Id.  The attorney asserted that Hampton was "rude," "imperious, overbearing," and "interpret[ed] any disagreement with him as insubordination, and any unwillingness to approach litigation with as an aggressive approach as his as weakness."  Id.  The anonymous attorney also claimed that multiple Region III attorneys left the DOL's Solicitor's Office because of Hampton's behavior.  Id. at 8.

In November 2021, in response to A1's allegations, the anonymous attorney's allegations, and the concerning employment survey results for Region III, Keen and Nanda tasked the Office of the Assistant Secretary for Administration & Management (OASAM) to investigate Hampton's management of Region III.  Id.  During the OASAM investigation, numerous employees complained that Hampton was retaliating against individuals who

participated in the OASAM investigation.[5]  See id. at 8-14.  Region III employees also continued to respond negatively in surveys about the region's upper management.[6]  See id. at 11.

On November 10, 2022, in response to the allegations of retaliation against Hampton and multiple negative survey results, the DOL issued a Notice of Detail and No Contact Order, temporarily detailing Hampton to the Front Office of the Solicitor of Labor in a fully remote status.  See id. at 14.  The DOL instructed Hampton to continue working on the enforcement action against East Penn and allowed him to work with other attorneys through trial.  Doc. 48, at 6.  On February 2, 2023, Hampton submitted a formal complaint of discrimination against the DOL.  Doc. 1-4, at 1.  The DOL's Administrative Review Board investigated Hampton's complaint and gathered documents and testimony from Region III employees, including the allegations made during the OASAM investigation.  Doc. 48, at 7.  The resulting documents and affidavits are collectively referred to as the "Report of Investigation" (ROI).[7]  Id.

Shortly after the trial concluded in the East Penn enforcement action, an attorney on the litigation team accused Hampton of sexually harassing her.  Doc. 69-1, at 107-08.  In response to these allegations, the DOL took Hampton off the litigation team and prohibited him from entering the DOL's offices without prior permission from Keen.  Doc. 1-4 at 15.  In September 2023, the DOL offered Hampton retirement "in lieu of termination," which he accepted.  Doc. 82, at 2; see Doc. 1-3, at 36.  One month later, the Administrative Review Board denied

---

[5] The complaints were that Hampton was bullying individuals, overly scrutinizing employees' work, and openly asking employees if they had spoken to Keen or Nanda about their investigation. Doc. 1-4, at 8-14.  In response to his conduct, multiple DOL attorneys requested to transfer out of Region III.  See id.

[6] Hampton submitted a memorandum to Keen addressing the employees' negative survey results.  Doc. 67-4, at 7.  His memorandum is in the DOL's investigative report and whether it is privileged is one of the issues raised here.  See id.

[7] This report and recommendation cites to the ROI in the following form: ROI, at [page number].

Hampton's discrimination complaint and issued a Final Agency Decision (FAD), concluding that "[Hampton had] failed to establish that he was subjected to disparate treatment or hostile environment based on his race, sex, and/or reprisal for prior EEO activity." Id. at 7-8. The FAD heavily cites to the ROI. See generally Doc. 1-4. In November 2023, Hampton filed an employment discrimination lawsuit against the DOL under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., in federal court based on his termination. Doc. 48, at 8.

Thereafter, East Penn began this collateral civil action to set aside the judgment against it based on fraud. Doc. 1, at 1-2; Doc. 64-1, at 7. East Penn alleges that throughout the 2023 trial, Hampton repeatedly represented to the court that he was the DOL's then Regional Solicitor for Region III. E. Penn Mfg. Co., 2025 WL 2803829 at *1. According to East Penn, these representations were false because "Hampton was removed from the position of Regional Solicitor in 2022." Id. It also cites to filings in Hampton's discrimination suit that reference vague statements from several DOL attorneys expressing "ethical concerns" about Hampton. Id. East Penn speculates that these ethical concerns were about the integrity of the enforcement action against it. Id.

## II. **PROCEDURAL HISTORY**

East Penn filed its complaint on July 16, 2024. Doc. 1. The DOL moved to dismiss the action, or, alternatively, to stay the case pending East Penn's related appeal to the Third Circuit. E. Penn Mfg. Co., 2025 WL 2803829 at *1. The District Court heard oral argument on the matter and entered a stay pending the Third Circuit's proceedings. Id. In January 2025, the Third Circuit affirmed the underlying judgment, and the District Court lifted the stay. Id. The District Court also directed the parties to commence discovery. Id.

On August 14, 2025, East Penn requested a full unredacted copy of the ROI in its First Set of Requests for Production of Documents. Doc. 45-1, at 8. The parties conferred, and the DOL agreed to produce parts of the ROI it felt were responsive to East Penn's complaint by March 14, 2025. Id. On March 14, 2025, the DOL only produced twenty-six redacted pages of the more than 1300-page ROI. Id. The DOL asserted all omissions and redactions from the ROI included privileged information, but the DOL did not file a privilege log or a declaration explaining the privileges it was claiming. Id. East Penn moved to compel further production of the ROI. Doc. 45. The DOL opposed, and East Penn filed a reply in support of its motion. Doc. 48; Doc. 52.

On July 1, 2025, the District Court granted East Penn's motion to compel and ordered the DOL to: (1) produce all non-privileged portions of the ROI within fourteen days of the order; and (2) compile and provide a privilege log for any portions of the ROI withheld based on a privilege. Doc. 57. On July 16, 2025, the DOL produced a larger, but still redacted, version of the ROI, a privilege log, and a declaration from Jonathan Snare, the current Acting Solicitor of Labor, explaining the bases of privilege for the DOL's redactions. Doc. 64-1 at 8.

On September 5, 2025, East Penn moved, again, to compel, among other things, production of the ROI without certain challenged redactions. Doc. 64 at 1-2. The DOL, again, opposed this motion and East Penn filed a reply in support. Doc. 68; Doc. 71. On October 1, 2025, the District Court denied the DOL's motion to dismiss and granted East Penn's latest motion to compel, in part.[8] E. Penn Mfg. Co., 2025 WL 2803829 at *3. In that same order, the

---

[8] East Penn's motion asked the DOL: (1) to produce "unredacted materials responsive to its First Set of Requests for Production;" (2) to provide full and complete answers to interrogatories; (3) to allow East Penn to proceed with the depositions of eight current and former DOL employees; and (4) to produce an unredacted copy of the ROI. E. Penn Mfg. Co., 2025 WL 2803829 at *1. The District Court granted East Penn's first three requests. Id.

District Court referred East Penn's motion to compel production of the ROI without certain challenged redactions to me for a report and recommendation. Doc. 73 at 1-2.

After the case was referred to me, the parties asked to file supplemental briefing and oral argument. The motion was granted, in part, and denied, in part. Doc. 81. East Penn submitted supplemental briefing addressing the discovery issue. Doc. 82. The DOL responded to East Penn's brief. Doc. 83. On January 28, 2026, the Court ordered the DOL to provide an unredacted copy of the ROI for in camera review. Doc. 84. The DOL complied.

## III.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 26 governs the scope of discovery, and it provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Courts interpret Rule 26 liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981). Under Rule 26, discovery material is relevant "if it bears on, or reasonably could bear on, an issue that is or may be involved in the litigation." Great West Life Assur. Co. v. Levithan, 152 F.R.D. 494, 497 (E.D. Pa. 1994). While relevant information need not be admissible at trial for disclosure, the burden remains on the party seeking discovery to show "that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000) (citation

7

omitted).  The Rule 26 relevance standard "depend[s] upon the context of each particular action," and is within District Court's discretion.  See Barnes Found. v. Twp. Lower Merion, No. 96-cv-0372, 1996 WL 653114, at *1 (E.D. Pa. 1996).

"Although the scope of discovery under the Federal Rules is unquestionably broad, [it] is not unlimited and may be circumscribed."  Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999) (citations omitted).  Pursuant to Rule 26(b)(2)(C), courts are required to limit discovery where "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from [an]other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  Courts will also refuse to compel discovery if the information sought is irrelevant or protected by a recognized privilege.  See Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).  Although the Federal Rules of Civil Procedure do not define the term "privilege," it is generally understood to mean "those evidentiary privileges applicable at trial."  See U.S. v. Reynolds, 345 U.S. 1, 7 (1953).

A party asserting a privilege has the burden of proof to show the privilege exists and that it applies.  See In re Grand Jury Investigation, 918 F.2d 374, 385, n.15 (3d Cir.1990).  If a party establishes a specific privilege applies, the party seeking discovery may demonstrate why the material should nevertheless be produced.  In re Grand Jury (OO-2H), 211 F. Supp. 2d 555, 557 (M.D. Pa. 2001) (citing U.S. v. Schwimmer, 892 F.2d 237, 244 (2d Cir. 1989)).  Courts are bound to construe evidentiary privileges strictly.  Univ. Pa. v. EEOC, 493 U.S. 182, 189 (1990) (internal citations omitted).

## IV.    **DISCUSSION**

In this case, the DOL asserts four privileges to support its redactions of the ROI. However, East Penn objects to the application of the privileges generally, and to specific redactions based on the work product privilege.

**A.      The DOL should be compelled to disclose the material it asserts is protected by the informant's privilege.**

East Penn objects to the redactions the DOL asserts are protected by the informant's privilege. These redactions identify individuals who reported Hampton's retaliatory conduct and sexual harassment to the DOL.[9]  East Penn contends that, although the DOL has properly invoked the informant's privilege, this privilege does not apply to the ROI. Doc. 64-1 at 17. This Court agrees with East Penn.

1.      <u>The DOL has properly invoked the government informant's privilege.</u>

The informant's privilege permits the withholding of the identity of people who furnish information about violations of the law to law enforcement officials. See Roviaro v. U.S., 353 U.S. 53, 59 (1957). For an agency to invoke the informant's privilege, it must file "a formal claim of privilege, lodged by the head [officer] of the department which has control over the matter, after actual consideration by [that] officer." <u>Chao v. Raceway Petrol.</u>, No. 06-cv-3363, 2008 WL 2064354, at *4 (D.N.J. May 14, 2008) (citing <u>Reynolds</u>, 345 U.S. at 7-8). Head officers of an agency may delegate this authority to subordinates, as long as the subordinate attests "to his or [her] personal review of the documents and materials at issue in the case." <u>Raceway Petrol.</u>, 2008 WL 2064354, at *5. The high-level subordinate must also provide precise and specific reasons for invoking the privilege in the form of a written declaration. <u>See</u> <u>U.S. v. O'Neill</u>, 619 F.2d 222, 226 (3d Cir. 1980).

---

[9] Fifteen entries in the DOL's privilege logs assert the informant's privilege. <u>See</u> <u>generally</u>, "Amended Privilege Log for July 16, 2025 DOL production of ROI," Doc. 67-4, at 2, 4, 5, 7-13.

In this case, the DOL submitted the declaration of Jonathan Snare, the Acting Solicitor of Labor and the DOL's chief legal aid officer in support of its assertion of the informant's privilege.  See Raceway Petrol., 2008 WL 2064354, at *5.  In the declaration, Snare asserted that he had personally reviewed all relevant facts and documents of this case, including the information the Secretary redacted based on the government informant's privilege.  Doc. 67-3, at 5.  He also provided precise and specific reasons to protect the confidentiality of these individuals' identities.  Id. at 4.  Snare asserted that, under the DOL's "long-standing" anti-harassment policy, once the DOL becomes aware of alleged harassment, it is responsible for reviewing the allegations, "while upholding privacy to the greatest extent possible and protecting the rights of all involved, including the right to be free of retaliation . . . ."  Id. at 1-2.  Snare stated the identities of the individuals who informed the DOL of Hampton's workplace misconduct are "protected by the government informant's privilege" to guard against the threat of retaliation and encourage open and honest reporting of unethical conduct.  See id. at 2-3.  Snare carefully reviewed the ROI redactions, and his declaration is precise and specific.  See Raceway Petrol., 2008 WL 2064354, at *5.  Thus, the DOL has properly invoked the government informant's privilege in this case.

2.    The informant's privilege does not apply to the material the DOL seeks to redact.

Once invoked, the agency asserting the informant's privilege must show the privilege applies to the corresponding redactions.  See In re Grand Jury Investigation, 918 F.2d at 385, n.15.  Critically, there is "no burden on the [federal agency] to prove retaliation is likely or possible to invoke the government informant's privilege."  See Walsh v. Nursing Home Care Mgt. Inc., No. 21-cv-2583, 2022 WL 3647820, at *5 (E.D. Pa. Aug. 24, 2022).  The Government possesses the right to this privilege.  See id.

10

The purpose of the informant's privilege—to further and protect the public interest in effective law enforcement—limits its applicability.  See Roviaro, 353 U.S. at 59-60 (1957); Donovan v. Fasgo, Inc., No. 81-cv-129, 1981 WL 2402, at *2 (E.D. Pa. Oct. 6, 1981).  "By preserving the anonymity of citizens who provide information, the privilege encourages citizens to perform their obligation of communicating to law enforcement their knowledge of the commission of crimes," making retaliation impossible.  Chao v. Westside Drywall, Inc., 254 F.R.D. 651, 656 (D. Or. 2009) (citations and quotations omitted).  As a result, the informant's privilege only protects an informant's identity and communications with the government that may tend to reveal their identity from disclosure.  U.S. v. Valles, 41 F.3d 355, 358 (7th Cir. 1994).  It does not automatically protect the substantive material of the informant's communications.  See Raceway Petrol., 2008 WL 206 4354 at *3.

Furthermore, federal agencies have been allowed to assert the informant's privilege in civil enforcement actions, such as FLSA actions, if the agency has a statutory obligation to investigate a complaint once received, or an obligation to initiate litigation upon a finding of probable cause to support the complaint.  Compare Nursing Home Care Mgt. Inc., 2022 WL 3647820 at *1 (E.D. Pa. Aug. 24, 2022) (recognizing that the informant's privilege may be invoked in civil cases), Dipasquale v. ADR Tr. Corp., No. 93-cv-4134, 1995 WL 251377 (E.D. Pa. Apr. 26, 1995) (allowing Office of the Inspector General to claim informant's privilege, in part, because "[t]he federal Inspectors General are charged with detecting and deterring fraud, waste and other wrongdoing in the administration of the agencies in which they are appointed."), and EEOC v. G-K-G Inc., 131 F.R.D. 553 (N.D. Ill. 1990) (allowing EEOC to raise informant's privilege in an age discrimination suit brought by the agency against private employer), with Fruchtman v. Town of Dewey Beach, 886 F. Supp 427, 428 (D. Del. 2012) (holding that mayor

11

of Dewey Beach could not claim the informant's privilege because "[she] has no statutory obligation to investigate a complaint once received, nor any obligation to initiate litigation upon finding probable cause to support the complaint."). The reasoning behind this allowance is simple—like criminal law enforcement officials, federal agencies pursuing civil enforcement actions rely on private cooperators to enforce their laws. See EEOC v. Consol. Edison Co. N.Y., No. 80-cv-1292, 1981 WL 212 at *2 (S.D.N.Y. June 2, 1981) (allowing EEOC to invoke the informant's privilege in an age discrimination suit). To secure a potential informant's assistance, federal agencies must be able to protect the informant from reprisal. See id.

In this case, when the DOL was investigating Hampton for retaliation and harassment, it was conducting an internal personnel investigation into his management of Region III pursuant to its anti-harassment policy. It was not investigating for purposes of a civil enforcement action based on any of its statutory obligations. The DOL has not presented—nor can the Court find— any legal support for allowing a federal agency to claim the informant's privilege when it is enforcing an internal policy against its own employees. As a result, in light of the Court's obligation to construe evidentiary privileges strictly, I recommend that the informant's privilege does not apply in this case. See Univ. Pa., 493 U.S. at 189. Accordingly, the material the DOL seeks to protect based on the government informant's privilege is not privileged material, and the DOL should be compelled to disclose the material.

**B.      The DOL should be compelled to disclose some, but not all, of the material it asserts is protected by the work-product privilege.**

East Penn challenges the DOL's assertion of the work product privilege as to four documents in the ROI: (1) Keen's email notes with A1; (2) Hampton's Memorandum in response to an employment survey; (3) Hampton's Memorandum to upper management explaining the DOL's trial strategy in the East Penn enforcement action; and (4) Keen's email notes with

Hampton concerning his mid-year review.  Doc. 64-1, at 18-19.  This Court finds that some of the DOL's redactions are protected by the work product privilege while others are not.

Federal Rule of Civil Procedure 26(b)(3) provides that "documents and tangible things that are prepared in anticipation of litigation . . . by or for another party" are not discoverable. EFG BNK AG v. Lincoln Nat'l Life Ins. Co., 593 F. Supp. 3d 225, 229 (E.D. Pa. 2022) (citing Fed. R. Civ. P. 26(b)(3)).  A document is deemed to have been created in anticipation of litigation when, "in light of the nature of the document and the factual situation of a particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  U.S. v. Rockwell Int'l., 897 F.2d 1255, 1266 (3d Cir. 1990).  The Court must consider "the state of mind of the party preparing the document or . . . the party ordering preparation of the document."  Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993).

Rule 26(b)(3) establishes two tiers of work product protection—ordinary work product protection and opinion work product protection.  In re Cendant Corp. Securities Litig., 343 F.3d 658, 663 (3d Cir. 2003). "[O]rdinary work product" includes "raw factual information." Kickflip, Inc. v. Facebook, Inc., No. 12-cv-1369, 2016 WL 5929003, at *4 (D. Del. Sept. 14, 2016) (internal quotation marks and citation omitted).  Ordinary work product may be discoverable if the party shows: (1) a "substantial need for the materials" and (2) that it "cannot, without undue hardship, obtain their substantial equivalent by other means[.]"  Fed. R. Civ. P. 26(b)(3).

"[C]ore" or "opinion" work product includes "mental impressions, conclusions, opinion[s], or legal theories of an attorney or other representative of a party concerning the litigation."  In re Cendant Corp., 343 F.3d at 663 (internal quotation marks and citation omitted);

see Fed. R. Civ. P. 26(b)(3)(B).  Opinion work product is "generally afforded near absolute protection from discovery[,]" and is discoverable only upon a showing of "rare and exceptional circumstances."  In re Cendant Corp., 343 F.3d at 663 (internal quotation marks omitted).

The work product doctrine is subject to exceptions.  See Westinghouse Elec. Corp. v. The Republic of the Phil., 951 F.2d 1414, 1427-29 (3d Cir. 1991).  If the party seeking discovery can establish the present case places an attorney's "mental impressions and opinions [concerning litigation] . . . directly at issue," then the work product privilege does not apply.  In re Sunrise Securities Litig., 130 F.R.D. 560, 566 (E.D. Pa. 1989).  Additionally, the need for production must be "compelling," and the information must be "within the exclusive control of the party from whom discovery is sought."  Id. at 568–69 (citing Bird v. Penn Cent. Co., 61 F.R.D. 43, 46-47 (E.D. Pa. 1973)).  This exception applies when a party raises allegations of an attorney's negligence or other misconduct while the attorney is rendering legal advice.  See id.  The party seeking to compel production of opinion work product bears the burden of establishing that the discovery is warranted.  See Utesch v. Lannett Co., Inc., No. 16-cv-5932, 2020 WL 7260775, at *9 (E.D. Pa. Dec. 9, 2020).

          1.       The work product doctrine does not protect the material the DOL seeks to redact in Keen's email notes detailing his meeting with A1.

First, East Penn moves to compel the DOL to produce an unredacted version of Keen's email notes detailing his meeting with A1 because the work product privilege does not apply. The redactions present in this document reveal A1's opinions about (1) litigation decisions made during the East Penn enforcement action, (2) Hampton's performance as an advocate in the East Penn litigation, and (3) the judge's interpretation of Hampton's performance in the East Penn litigation.  Doc. 67-4, at 5; ROI, at 458, 464, 465, 470.  Keen's email notes detailing his meeting with A1 are relevant, for discovery purposes, to East Penn's current action because an attorney's

opinion concerning Hampton's representations to the court may contain evidence that could reasonably bear upon East Penn's claim of fraud and unethical conduct. See Levithan, 152 F.R.D. at 497.

In its privilege log, the DOL claims the work product doctrine prevents disclosure of the redactions present in Keen's email notes because they contain A1's mental impressions. Doc. 67-4, at 5. However, the DOL has failed to show that the attorney's mental impressions were made in the *anticipation* of litigation. See Rockwell Int'l., 897 F.2d at 1266 (emphasis added). As a result, the work product privilege does not apply to Keen's email notes. Accordingly, the redactions present in Keen's notes are not privileged, and I recommend the DOL be compelled to present an unredacted copy to East Penn.

    2.    <u>Hampton's memorandum regarding a Region III employee survey is not relevant for purposes of discovery.</u>

The second document East Penn moves to compel the DOL to produce unredacted is Hampton's memorandum regarding employee survey results in Region III. The redactions present in this document contain Hampton's general impressions about the relationship between staff attorneys and management regarding the DOL's valuation of FLSA actions. Doc. 67-4, at 7; ROI, at 200-01, 629-30, 1047-48. After completing <u>in camera</u> review of the unredacted copy of this document, the Court finds no mention of misconduct. Additionally, the document does not mention East Penn, or the enforcement action against it. Thus, Hampton's memorandum does not contain any information that could reasonably bear upon East Penn's claim of fraud in the enforcement action. See <u>Levithan</u>, 152 F.R.D. at 497. Accordingly, Hampton's memorandum regarding Region III survey results is not relevant for purposes of discovery in the current action. I recommend the DOL not be compelled to disclose it.

3.  <u>Hampton's memorandum to upper management is privileged work product, but this document is subject to the "at-issue" exception and should be disclosed.</u>

Next, East Penn seeks an unredacted copy of Hampton's memorandum to DOL upper management detailing his trial strategy and critical evidence in its enforcement action against East Penn.  Doc. 67-4, at 11; ROI, at 793-98.  This document is relevant to East Penn's current action because Hampton's representations to the DOL's upper management could reasonably bear upon the present issue—whether Hampton committed fraud—an intentional act.  <u>See</u> <u>Levithan</u>, 152 F.R.D. at 497.  Critically, this document is protected by the ordinary work product privilege because it was drafted by the DOL's lead trial counsel in anticipation of the enforcement action against East Penn for the purpose of advising the DOL's upper management on Hampton's trial strategy.  <u>See</u> <u>Rockwell Int'l.</u>, 897 F.2d at 1266.

Because East Penn alleges Hampton committed fraud and ethical misconduct during the enforcement action, his representations and mental impressions while litigating that action are squarely at issue in East Penn's current action.  <u>See</u> <u>In re Sunrise Securities Litig.</u>, 130 F.R.D. at 566.  Furthermore, Hampton's memorandum is an internal document that was not publicly disclosed, and therefore, it presumably is within sole control of the DOL.  <u>See</u> <u>Bird</u>, 61 F.R.D. at 46-47.  Accordingly, Hampton's memorandum falls within the "at-issue" exception.  I recommend the DOL be compelled to disclose an unredacted version of this document to East Penn.  <u>See</u> <u>id.</u>

4.  <u>Part of Keen's email notes with Hampton regarding his mid-year review are protected by the work product privilege, while other parts are not, and East Penn has not shown an exception applies to the privilege.</u>

The fourth document East Penn demands the DOL turn over is Keen's email notes detailing his conversation with Hampton during his mid-year evaluation meeting.  Doc. 67-4, at

16

11.  This document contains Hampton's opinions about: (1) DOL attorneys who worked on the enforcement action against East Penn and Hampton's evaluation of their performances; and (2) trial strategy after obtaining the judgment against East Penn.  ROI, at 869-70.  This document is relevant to East Penn's current action as it may contain information concerning Hampton's impressions about the enforcement action, and such information reasonably could bear on East Penn's current claim of fraud.  See Levithan, 152 F.R.D. at 497.

First, to the extent the redactions are based on references to Hampton's impressions of other attorneys on the litigation team, this is not privileged work product because the impressions were not made in anticipation of litigation.  See Rockwell Int'l., 897 F.2d at 1266.  Thus, the DOL should be compelled to disclose any material regarding Hampton's evaluation of the performances of other attorneys in the East Penn enforcement action.  See ROI, at 869-70.

Second, the redactions containing Hampton's discussion of the DOL's post-trial strategy in the East Penn enforcement action are an attorney's mental impressions of a case in anticipation of further litigation.  See ROI, at 869-70.  Therefore, these impressions are opinion work product and not discoverable.  See In re Cendant Corp., 343 F.3d at 663.  East Penn has failed to demonstrate that Keen's email notes detailing his conversation with Hampton are solely within the exclusive control of the DOL.  See ROI, at 869-70.  Keen's email notes are not an internal document, and the information contained in this document may also be obtained from Keen directly.  As a result, East Penn cannot establish the "at-issue" exception.  See In re Sunrise Securities Litig., 130 F.R.D. at 566.

For these reasons, I recommend East Penn's motion to compel an unredacted copy of Keen's email notes regarding Hampton's discussion of the DOL's post-trial strategy in the East Penn enforcement action should be denied.[10]

### C. The DOL should not be compelled to produce the material it claims is protected by the deliberative process privilege because this material is otherwise protected by the work product privilege.

Finally, East Penn moves to compel the DOL to produce the material the DOL claims is protected by the deliberative process privilege.  These redactions contain internal discussions about: (1) the effectiveness of the DOL's regional litigation in Region III, (2) the use of expert witnesses in DOL litigation, unrelated to the East Penn enforcement action, and (3) DOL settlement valuations.  See Doc. 67-4, at 3, 6, 8.

The Court notes that the DOL has also invoked the work product privilege wherever it has claimed the deliberative process privilege.  See id.  Because this material discusses trial strategy of future enforcement actions and the mental impressions of DOL attorneys regarding ongoing litigation, the work product privilege protects these redactions from disclosure.  See In re Cendant Corp., 343 F.3d at 663.  Most importantly, East Penn does not challenge the work product privilege pertaining to these documents.  See In re Grand Jury Investigation, 918 F.2d

---

[10] East Penn raises two other exceptions to the work product privilege including the crime-fraud exception and waiver.  Neither exception applies to Keen's email notes detailing his conversation with Hampton concerning his mid-year review.

First, East Penn has not presented any evidence to establish the crime-fraud exception applies because it has only presented bare allegations of fraud in its brief, which is not sufficient. See In re Grand Jury Matter #3, 847 F.3d 157, 165 (3d Cir. 2017).

Second, East Penn argues the DOL waived its work product privilege by disclosing the FAD, which cites heavily to the ROI.  The FAD presents only a summary of the events leading up to Hampton's termination.  See generally Doc. 1-4.  As a result, the DOL has kept the contents of the ROI from East Penn and has not waived its work product privilege.  Maldonado v. N.J. ex. rel. Admin. Off.  Cts.–Prob. Div., 225 F.R.D. 120, 131 (D.N.J. 2004) ("The essential question with respect to waiver of the work-product privilege by disclosure is whether the material has been *kept away from adversaries*.") (emphasis added).

374, 385, n.15 (3d Cir.1990). Accordingly, the DOL should not be compelled to disclose the material it argues is protected by the deliberative process privilege because the work product privilege protects this material.[11] Therefore, I recommend East Penn's motion to compel the DOL to produce this material be denied.

## V. CONCLUSION

For the reasons set forth above, this Court respectfully recommends East Penn's motion to compel be **GRANTED**, **in part**, for: (1) all material the DOL claims is protected by the informant's privilege; (2) an unredacted copy of Keen's email notes with A1; (3) an unredacted copy of Hampton's memorandum to upper management detailing the DOL's trial strategy for the East Penn enforcement action; and (4) material relating to Hampton's evaluation of his former colleagues' performance in Keen's email notes about Hampton's mid-year review.

This Court also recommends that East Penn's motion to compel be **DENIED**, **in part**, for: (1) Hampton's memorandum in response to a Region III employee survey; (2) material detailing the DOL's post-trial strategy in the East Penn enforcement action in Keen's email notes about Hampton's mid-year review; and (3) all material the DOL asserts is protected by the deliberative process privilege.

---

[11] To invoke the deliberative process privilege, the federal agency must submit "[a] formal claim of privilege, lodged by the head of the [agency] which has control over the matter, after actual personal consideration by that officer." Nursing Home Care Mgt. Inc., No. 21-cv-02583, 2022 WL 3647820, at *3 (E.D. Pa. Aug. 24, 2022).

In this case, the DOL has provided the declaration of the acting Solicitor of Labor and not a declaration from the Secretary of Labor, in other words, the head officer of the DOL. See Scott Paper Co. v. U.S., 943 F. Supp. 501, 502 (E.D. Pa. 1996) (stating courts in this jurisdiction do not permit head officers of agencies to delegate authority to raise the deliberative process privilege to subordinates). As a result, the DOL has not properly invoked the deliberative process privilege in this case, and the deliberative process privilege cannot apply to the material it seeks to redact.